UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>VN ALLIANCE LLC,<br><br>Defendant. | Case No. 18-cv-01372-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF 23] |

In this action, Plaintiff Scott Johnson asserts claims under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*. and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51–53. *See generally* Complaint, ECF 1. Plaintiff seeks injunctive relief along with statutory damages, attorney's fees, and costs of suit. *Id.*

Defendant VN Alliance LLC ("VN Alliance") failed to answer the complaint or to otherwise appear in this matter. Therefore, at Mr. Johnson's request, the Clerk of Court entered default as to VN Alliance on May 9, 2018. Entry of Default, ECF 13. Now before the Court is Mr. Johnson's Motion for Default Judgment ("Motion"). Motion, ECF 23. Because VN Alliance has not appeared in this case, there is no notice requirement for either the entry of default or Plaintiff's motion[1] for default judgement. *See* Fed. R. Civ. P. 55(a), (b)(2). VN Alliance did not oppose or otherwise respond to the Motion. Briefing on the matter is now closed. Civ. L.R. 7-3(a). This matter was previously deemed suitable for determination without oral argument. *See* ECF 25. For the reasons discussed below, the Court GRANTS Plaintiff's motion for default judgment.

---

[1] The docket indicates that Mr. Johnson served his original motion papers (ECF 21) by mailing them to VN Alliance's registered agent for service of process on January 29, 2019. *See* Proof of Service, ECF 21-9. However, Mr. Johnson withdrew the motion at ECF 21, *see* ECF 22, replacing it with the instant motion at ECF 23.

## I. BACKGROUND

According to his complaint, Plaintiff is a level C-5 quadriplegic who cannot walk and has significant manual dexterity impairments. Mr. Johnson says he uses a wheelchair for mobility and has a specially equipped van. Complaint ¶ 1. Defendant VN Alliance LLC ("VN Alliance") is the alleged owner of the Caravelle Inn ("Inn") in San Jose, California, and of the parcel of real property where the Inn is located. Complaint ¶¶ 2–11.

Mr. Johnson alleges that barriers at the Inn prevented him from enjoying full and equal access at the facility. Specifically, the complaint alleges that Mr. Johnson visited the Inn on several occasions, including on May 2017, August 2017, October 2017, and November 2017. Complaint ¶ 16. During each of those visits, he says he encountered the following types of access barriers:

1. Mr. Johnson claims that persons with disabilities cannot access the parking lot serving the Inn. The parking spaces did not have the required "Minimum Fine $250" or tow-away signages. Complaint ¶ 20. The access aisles for these parking spaces did not have the required "NO PARKING" lettering or the required blue border. Complaint ¶¶ 22–23. Finally, non-disabled individuals parked in the supposedly handicap parking spaces and access aisles with impunity. Complaint ¶ 24.

2. In addition, Mr. Johnson claims that people with disabilities encounter difficulties accessing the Inn's guestrooms. Complaint ¶¶ 26–31. Mr. Johnson claims that he requires two beds: one for himself and one for his aide, but the Inn does not provide rooms with two beds. Complaint ¶ 29. Finally, Mr. Johnson claims that restrooms within these guestrooms do not have proper protective covering. *See* Motion at 11; *see also* Photos & Receipts from Johnson at 8, Ex. 4 to Motion, ECF 23-6.

3. Mr. Johnson claims that he encountered multiple physical barriers at the Inn. Complaint ¶¶ 36–38. At the entrance to the Inn, he alleges that the door's hardware is "a pull bar style handle that requires tight grasping to operate." Complaint ¶ 37. Finally, Mr. Johnson claims that he had to conduct transactions over a counter that is 55-inches high. Complaint ¶¶ 41–44.

According to Mr. Johnson, the barriers he encountered "caused him difficulty, discomfort, and embarrassment." Complaint ¶ 46. While he says would like to return and patronize the Inn, Mr. Johnson claims that he "will be deterred from visiting until the defendants remove the barriers." Complaint ¶ 53.

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, who is neither a minor nor an incompetent person, and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a).

After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, a court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

## III. DISCUSSION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court discusses in turn jurisdiction, service of process, the *Eitel* factors, and Plaintiff's requested relief.

### A. Jurisdiction

Federal question jurisdiction is based on Mr. Johnson's ADA claim for relief. 28 U.S.C.

§ 1331. The Court has supplemental jurisdiction over his California Unruh Act claim pursuant to 28 U.S.C. § 1367.

This Court is also satisfied that personal jurisdiction exists over VN Alliance. Mr. Johnson's complaint indicates that VN Alliance is a California company that owns the Inn and the real property in San Jose, California, on which the Inn is located. Complaint ¶¶ 2–11. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (stating that a corporation's general jurisdiction is its place of incorporation or principal place of business); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (stating that general jurisdiction for a corporation is where it is fairly regarded as at home).

### B. Service of Process

Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, a domestic corporation may be served:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1)(B). Alternatively, Rule 4 provides that service on a corporation may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

California Code of Civil Procedure section 416.10 provides that a corporation may be served by "delivering a copy of the summons and the complaint . . . [t]o the person designated as agent for service of process" or "[t]o the president, chief executive officer, or other head of a corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager or person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10(a), (b).

Mr. Johnson successfully served VN Alliance on April 2, 2018, by delivering copies of the summons and complaint via personal service to an officer of the company, Cindy Vu. *See* Returned Summons, ECF 11; Public Records at 12, Ex. 5 to Motion, ECF 23-7. As such, the

Court is satisfied that Mr. Johnson gave VN Alliance proper service of process under both the Federal Rules of Civil Procedure and the California Code of Civil Procedure.

### C. *Eitel* Factors

For the reasons to be discussed, the *Eitel* factors weigh in favor of entering default judgment.

#### 1. The possibility of prejudice to Mr. Johnson

The first *Eitel* factor requires the Court to consider whether Mr. Johnson would be prejudiced if default judgment is not entered. Unless default judgment is entered, Mr. Johnson will have no other means of recourse against VN Alliance. As such, there would be prejudice against Mr. Johnson. *See, e.g., Ridola v. Chao*, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018) (finding that the plaintiff would be prejudiced if default judgment were not entered because she "would have no other means of recourse against Defendants for the damages caused by their conduct").

#### 2. The merits of Mr. Johnson's claims and the sufficiency of the complaint

Pursuant to the second and third *Eitel* factors, this Court concludes that the complaint alleges meritorious substantive claims for relief.

##### a. ADA Title III, 42 U.S.C. § 12101, *et seq.*

Title III of the ADA prohibits discrimination by places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id*. § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *Id*. § 12181(9).

###### i. Mr. Johnson's Article III Standing

To establish Article III standing for an ADA claim, Mr. Johnson must demonstrate he suffered an injury in fact, traceable to VN Alliance's conduct, and redressable by a favorable court

decision. *Ridola*, 2018 WL 2287668 at *5 (citing *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)). Mr. Johnson argues that he suffers from a disability within the meaning of the ADA. *See* Motion at 10. He also alleges that the Inn denied him goods and services offered to its non-disabled guests, and he personally encountered barriers to full and equal access of the Inn's facilities. Complaint ¶¶ 45–47. As discussed above, Mr. Johnson claims that he did not have access to the handicapped parking space. Complaint ¶ 19. Mr. Johnson also alleges that he requires a guestroom with two beds, but the Inn only has rooms with a single bed. Complaint ¶ 29. He encountered difficulties entering the entrance of the Inn. Complaint ¶¶ 36–37. He says that the Inn's transaction counter is too high for use by persons in wheelchairs. Complaint ¶¶ 42–44.

The complaint further alleges that VN Alliance failed to maintain the facilities in useable and working condition for disabled persons, and it failed to remove some of the specified barriers. Complaint ¶¶ 47–48. Moreover, Mr. Johnson claims that he is deterred from returning to the Inn because of the alleged barriers. Complaint ¶¶ 53–54. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) ("Indeed, '[d]emonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is *deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.'") (quoting *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)).

Mr. Johnson's factual allegations are accepted as true by VN Alliance's default, and an award of statutory damages and injunctive relief would redress Mr. Johnson's alleged injuries. Accordingly, this Court finds that Mr. Johnson has Article III standing to sue under the ADA.

### ii. ADA Claim Elements

To prevail on his Title III discrimination claim, Mr. Johnson must show that (1) he is disabled within the meaning of the ADA; (2) VN Alliance is a private entity that owns, leases, or operates a place of public accommodation; and (3) he was denied public accommodations by VN Alliance because of his disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir.

2007). To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola*, 2018 WL 2287668 at *5 (citations omitted).

Assuming the truth of the complaint's factual allegations, Mr. Johnson has established that he has a disability within the meaning of the ADA. Under the ADA, a physical impairment that substantially affects a major life activity, such as walking, qualifies as a disability. 42 U.S.C. §§ 12102(1)(A), 12102(2)(A). As discussed above, Mr. Johnson says he is a C-5 quadriplegic who uses a wheelchair for mobility. Complaint ¶ 1. Mr. Johnson further alleges that VN Alliance owns the Inn, a place of public accommodation. Complaint ¶¶ 2–11; s*ee* 42 U.S.C. § 12181(7)(A) (listing "an inn, hotel, or other place of lodging" as a public accommodation). Mr. Johnson also alleges that during several visits to the Inn, he personally encountered access barriers with respect to the parking lot, sleeping accommodations, and entrance to the Inn and guestrooms. Complaint ¶¶ 18–47.

Mr. Johnson contends that the alleged barriers violate the current 2010 Standards of the ADA Accessibility Guidelines ("ADAAG"). The ADAAG provide "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 945. As such, "a violation of the ADAAG constitutes a barrier under the ADA." *Ridola*, 2018 WL 2287668 at *7. However, Mr. Johnson incorrectly applies the 2010 Standards to his claims. It is the Court's understanding that the 1991 Standards apply to construction completed before March 15, 2012, and that the 2010 Standards apply to construction or alterations after that date. *See id*. Here, Mr. Johnson submits public records showing that the Inn was constructed prior to March 2012, *see* Public Records at 3, ECF 23-7, but does not submit evidence that construction or alteration has been made to the Inn since March 15, 2012. Accordingly, the Court applies the 1991[2] ADAAG Standards. However,

---

[2] The Court notes that even if the 2010 Standards applied, the Court would still find that VN Alliance violated the ADAAG.

7

the 2010 Standards govern any injunction that the Court issues, as all remedial work will be undertaken after March 15, 2012.

Mr. Johnson claims that the Inn's failure to provide accessible parking spaces violates the 2010 Standards. Under the 1991 Standards, one in every eight accessible parking spaces must be van accessible. 28 C.F.R. Pt. 36, App. A § 4.1.2(5)(b). During Mr. Johnson's visits to the Inn, he did not encounter any compliant parking spaces. Complaint ¶¶ 19–24. Therefore, the Court agrees with Mr. Johnson's allegations that the lack of van accessible parking represents a violation of the ADA.

In addition, Mr. Johnson alleges that the Inn failed to offer two beds in the designated accessible guestrooms. Complaint ¶ 29. Indeed, § 9.1.4 of the 1991 Standards requires that places of lodging have accessible rooms and that "such rooms must be dispersed among the various classes of sleeping accommodations to provide a range of options applicable to room size, costs, amenities, and number of beds." *Ridola*, 2018 WL 2287667 at *7; *see also* 1991 ADAAG, 28 C.F.R. Pt. 36, App. D §§ 9.1.2, 9.1.4. The 1991 Standards require that places of lodging with as few as 1 to 25 rooms for rent have at least one room with the required mobility features. 28 C.F.R. Pt. 36, App. A § 9.1.2. Here, Mr. Johnson submits that the Inn has at least 1 to 25 rooms for rent and alleges that none of the guestrooms at the Inn had two beds. Complaint ¶ 29; *see also* Motion at 11. Assuming the truth of Mr. Johnson's allegations, the Court is satisfied that VN Alliance's guestrooms constitute a violation of the ADA.

Furthermore, Mr. Johnson alleges issues with the Inn's doors. The Inn's entrance door is "a pull bar style handle that required tight grasping to operate." Complaint ¶ 37. The 1991 Standards provide: "Handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate." 28 C.F.R. Pt. 36, App. A § 4.13.9. Therefore, assuming the truth of Mr. Johnson's allegation regarding the Inn's doorknobs, the Court finds these facilities in violation of the ADA.

Finally, Mr. Johnson alleges that the Inn's transaction counter was more than 36 inches high, and no lowered 36-inch portion of the counter could be used by persons in wheelchairs.

1  Complaint ¶¶ 42–43. The 1991 Standards provide that for hotel counters, a portion of the main counter which is a minimum of 36 in (915 mm) in length shall be provided with a maximum height of 36 in (915 mm)." 28 C.F.R. Pt. 36, App. A § 7.2(2)(i). If the main counter does not meet these requirements, then "an auxiliary counter with a maximum height of 36 in (915 mm) in close proximity to the main counter shall be provided." 28 C.F.R. Pt. 36, App. A § 7.2(2)(ii). Assuming the truth of Mr. Johnson's allegations, the Court also finds that the height of the Inn's counters violated portions of the ADA.

As for the "readily achievable" element of his ADA claim, citing *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127 (E.D. Cal. 2007), Mr. Johnson argues that this is an affirmative defense that is waived unless raised by the defendant. *See* Motion at 12. Therefore, Mr. Johnson believes that this affirmative defense has been waived because VN Alliance has not appeared in this matter. *See id.*

"The Ninth Circuit has yet to decide who bears the burden of proving that removal of an architectural barrier is readily achievable." *Johnson v. Altamira Corp.*, 2017 WL 1383469, at *3 (N.D. Cal., Mar. 27, 2017) (internal citation and quotation omitted). On one hand, several federal courts, including district courts within the Ninth Circuit, follow the burden-shifting framework articulated by the Tenth Circuit. *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1010 (citing *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001)). Under the *Colorado Cross* burden-shifting analysis, the plaintiff bears the initial burden of production to show that a suggested method for removing a barrier is readily achievable, and the defendant bears the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable. *See id.* (citing *Colorado Cross*, 264 F.3d at 1006). On the other hand, at least in the historic facilities context, the Ninth Circuit declined to adopt the *Colorado Cross* burden-shifting framework and instead placed the burden of production squarely upon the defendant as "the party with the best access to information regarding the historical significance of the building." *Molski v. Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043, 1048 (9th Cir. 2008). Although limited to the historic facilities context, *Foley Estates* recognized that Congress relies on private individuals to enforce the ADA and noted the general principle espoused by the *Colorado Cross*'s

9

dissent: "'[i]f plaintiffs must all but present the court with a pre-approved construction contract for a sum certain which includes detailed plans, impact statements, engineering studies, and permits to meet their threshold burden, virtually no plaintiff could afford to bring an architectural barrier removal claim under 42 U.S.C. § 12182(b)(2)(A)(iv).'" *Id*. at 1048–49 (quoting *Colorado Cross*, 264 F.3d at 1011). "We need not require an ADA plaintiff to undertake such heroic measures." *Id*. at 1049.

Regardless of who bears the burden of proof, *Foley Estates*' general observations, as well as cases applying the *Colorado Cross* burden-shifting framework, suggest that the plaintiff's initial burden, at least in the default judgment context, is not onerous. *See, e.g.*, *Johnson v. Hall*, 2012 WL 1604715, at *3 (E.D. Cal., May 7, 2012) (concluding that the plaintiff met his burden where the complaint's allegation that the barriers "are readily removable" was deemed true on default and where he sought injunctive relief to remove barriers if it was readily achievable to do so); *Johnson v. Beahm*, 2011 WL 5508893, at *3 (E.D. Cal., Nov. 8, 2011) (same).

In this action, Mr. Johnson alleges that the identified barriers are "easily removed without much difficulty or expense" and "are the types of barriers identified by the Department of Justice as presumably readily achievable to [be] remove[d] . . . ." Complaint ¶ 54. Additionally, the complaint alleges that "there are numerous alternative accommodations" to provide people with disabilities a greater level of access even if VN Alliance could not achieve a complete removal of barriers. Complaint ¶ 54. Mr. Johnson alleges that VN Alliance could easily fix these barriers without great cost. Complaint ¶ 55.

Federal regulations provide a non-exclusive list of steps to remove barriers, including "[i]nstalling accessible door hardware," 28 C.F.R. § 36.304(b)(11), and courts have observed that the listed items are "examples of readily achievable steps to remove barriers . . . ." *Altimira Corp.*, 2017 WL 1383469, at *3; *see also Vogel*, 992 F. Supp. 2d at 1011 (concluding that the plaintiff met his initial burden of showing that the barrier removal was readily achievable where he alleged that the defendant had the financial resources to remove the barriers without difficulty, but refused to do so, and where many of the barriers in question were among those listed in 28 C.F.R. § 36.304(b)). Moreover, at the default judgment stage, courts have found allegations similar to

10

Mr. Johnson's allegations sufficient to show that the removal of the barriers at issue is readily achievable. *See, e.g.*, *Ridola*, 2018 WL 2287668 at *11 (concluding that the plaintiff met her initial burden with respect to the defendant motel's sleeping accommodations, as well as other alleged barriers listed in 28 C.F.R. § 36.304(b)); *Altimira*, 2017 WL 1383469, at *3 (concluding that the plaintiff met his burden with respect to the defendant's sales counter and other alleged barriers) (citing *Hall*, 2012 WL 1604715, at *3)).

Here, VN Alliance defaulted and has not defended this action. Thus, VN Alliance has failed to meet its burden to show that removal of the identified barriers is not readily achievable. Moreover, even if Mr. Johnson bears the burden of proving that removal of the barrier is not readily achievable, the Court finds that in this default proceeding Mr. Johnson has satisfied this burden. In sum, the Court finds that Mr. Johnson has met the requisite ADA claim elements.

### b. Unruh Act Claim

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *MJ Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, to the extent Mr. Johnson has an ADA claim based on the Inn's sleeping accommodations, entrance door, and transaction counter, he also has an Unruh Act claim based on those barriers.

### 3. The amount of money at stake

This *Eitel* factor requires the Court to consider the sum of money at stake in relation to the seriousness of a defendant's conduct. *Love v. Griffin*, 2018 WL 4471073, at *5 (N.D. Cal., Aug. 20, 2018). Mr. Johnson seeks only statutory damages under the Unruh Act. While the sum requested is not insignificant, the Court finds it proportional to the conduct alleged.

### 4. The possibility of a dispute concerning material facts and whether VN Alliance's default was due to excusable neglect

Under the fourth and fifth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether VN Alliance's failure to respond was the result of excusable neglect. *Love*, 2018 WL 4471073 at *5; *Ridola*, 2018 WL 2287668 at *13. Because Mr. Johnson pleads plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that indicates a

11

possibility of a dispute as to material facts. Moreover, there is no indication that VN Alliance's default was due to excusable neglect. VN Alliance has not appeared or responded in this action, suggesting that it has chosen not to present a defense in this matter. Accordingly, these factors weigh in favor of default judgment.

### 5. The strong policy favoring decisions on the merits

While the Court prefers to decide matters on the merits, VN Alliance's failure to participate in this litigation makes that impossible. *See Ridola*, 2018 2287668 at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment therefore is Mr. Johnson's only recourse. *See United States v. Roof Guard Roofing Co, Inc.*, 2017 WL 6994215, at *3 (N.D. Cal., Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

## D. Requested Relief

Because this Court concludes that default judgment is warranted, it now considers Mr. Johnson's request for injunctive relief, statutory damages under the Unruh Act, and attorney's fees and costs.

### 1. Injunctive Relief

Mr. Johnson requests an order directing VN Alliance to bring one of its hotel rooms at the Inn into compliance with the 2010 ADAAG Standards. *See* Motion at 2. Plaintiff's proposed judgment (ECF 23-1) also includes injunctive relief regarding the transaction counter. However, the Court does not read Plaintiff's motion for default judgment as requesting this relief. *See generally* Motion. Therefore, Plaintiff's request for injunctive relief with respect to the transaction counter is denied.

Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *MJ Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See* Cal. Civ. Code § 52.1(h). "A plaintiff need not satisfy '[t]he standard requirements for equitable

relief . . . when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief.'" *Love*, 2018 WL 4471073 at *6 (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)). Thus, injunctive relief is proper under the ADA where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668 at *13 (citing *Moreno v. La Curacao*, 463 Fed. Apps. 669, 670 (9th Cir. 2011)). For the reasons discussed above, Mr. Johnson has done so here. Accordingly, the Court grants Mr. Johnson's request for injunctive relief to bring one of the Inn's guestrooms in line with the 2010 ADAAG Standards.

### 2. Statutory Damages

Monetary damages are not available in private suits under Title III of the ADA. *MJ Cable, Inc.*, 481 F.3d at 730 (citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir.2002)). However, the Unruh Act provides a minimum statutory damages award of $4,000 "for each occasion an individual is denied equal access to an establishment covered by the Unruh Act . . . ." *Ridola*, 2018 WL 2287668 at *15 (citing Cal. Civ. Code § 52(a)). Mr. Johnson "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *MJ Cable, Inc.*, 481 F.3d at 731. As such, Mr. Johnson requests damages of $4,000 for the barriers he encountered, and the Court finds that Mr. Johnson has established his entitlement to that award.

### 3. Attorney's Fees and Costs

Mr. Johnson requests $6,313 in attorney's fees and $630 in costs. *See* Motion at 2; Billing Statement, Ex. 7 to Motion, ECF 23-9. However, in support of attorney's fees, Plaintiff submits two billing statement with different billing rates. *See* Decl. of Dennis Price at 9, Ex. 1 to Motion, ECF 23-3; *see also* Billing Statement at 2, Ex. 7 to Motion, ECF 23-9. Because Plaintiff's attorney's declaration in support of fees only mentions the lower rates, the Court's only evidence of the billing rates corresponds to the lower rates. *See* Decl. of Dennis Price ¶¶ 7–11, Ex. 1 to Motion, ECF 23-3. Therefore, the Court awards attorney's fees based on the lower rates.

The ADA gives courts the discretion to award attorney's fees, including litigation expenses and costs, to prevailing parties. *MJ Cable, Inc.*, 481 F.3d at 730 (citing 42 U.S.C. § 12205).

1 Additionally, the Unruh Act provides that "[i]n addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to [Cal. Civ. Code § 52.1(b)], the court may award the petitioner or plaintiff reasonable attorney's fees." Cal. Civ. Code § 52.1(h).

Whether calculating attorney's fees under California or federal law, courts follow the lodestar approach. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds* by *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.*

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). The fee applicant has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum*, 465 U.S. at 896 n.11. "Affidavits of the plaintiffs' attorney . . . setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Mr. Mark Potter, Mr. Russell Handy, and Ms. Phyl Grace charged $425 per hour while Ms. Christina Carson and Mr. Dennis Price charged $350 per hour. *See* Decl. of Dennis Price at 9, Ex. 1 to Motion, ECF 23-3. The attorneys who charged $425 per hour spent 7.0 hours on the case while the attorneys who charged $350 per hour worked 4.3 hours on the case. *See id.* As such, Plaintiff's attorneys spent a total of 11.3 hours on the case for a total of $4,480 in attorney fees. Plaintiff cites several decisions from the Northern District of California to support the reasonableness of Plaintiff attorneys' hourly rates. *See* Motion at 16 (citing *Armstrong v. Brown*, 805 F. Supp. 2d 918, 922–23 (N.D. Cal. 2011) (Appendix A); *Elder v. National Conference of Bar Examiners*, C-11-00199-SI, 2011 WL 4079623 (N.D. Cal. Sept. 12, 2011)).

The Court has reviewed the experience of Plaintiff's attorneys. *See* Decl. of Dennis Price, Ex. 1 to Motion, ECF 23-3. Here, the rates of Plaintiff's attorneys appear to be reasonable given the history of rates charged in the Northern District of California in ADA cases. *See* Motion at 16. Additionally, the Court has reviewed the itemized statement of Plaintiff's counsel's legal work and finds no issue with the amount of time or activities that plaintiff's counsel has conducted. *See* Decl. of Dennis Price at 9, Ex. 1 to Motion, ECF 23-3. Accordingly, the Court finds no issue with the fees charged by Plaintiff's attorneys.

In addition, Mr. Johnson has substantiated his request for $630 in filing fees and service costs. *See generally* Complaint (confirming receipt number and payment of the $400 filing fee); *see* Billing Statement, Ex. 7 to Motion, ECF 23-9 (billing statement for investigator fees and service costs).

In sum, the Court awards $4,480 in attorney's fees and $630 in costs, for a total award of $5,110 in fees and costs.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED THAT:

1. Mr. Johnson's motion for default judgment is granted.
2. Mr. Johnson is awarded statutory damages in the amount of $4,000.
3. Mr. Johnson is awarded $5,110 in attorney's fees and costs.
4. Mr. Johnson is granted an injunction requiring VN Alliance to bring one of its guestrooms at the Inn into compliance with the 2010 ADAAG Standards no later than six months after service of this injunction.

Mr. Johnson shall promptly serve VN Alliance with this Order and file a proof of service with the Court.

**IT IS SO ORDERED.**

Dated: June 18, 2019

_____
BETH LABSON FREEMAN
United States District Judge